IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


GLORIA SUE WORKMAN                                                PLAINTIFF


  v.                              CIVIL NO. 10-5119


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Gloria Sue Workman, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on January 13, 2006, alleging an inability to work since October 19, 2005,[1] due to a borderline personality with major depression; arthritis in the knees; and back pain.  (Tr. 11, 46).  An administrative hearing was

---

[1] At the administrative hearing before the ALJ, Plaintiff, through her counsel, amended her alleged onset date to August 1, 2007.  (Tr. 11, 270).

**AO72A**
**(Rev. 8/82)**

held on December 20, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 266-309).

By written decision dated May 19, 2008, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.14). Specifically, the ALJ found Plaintiff had the following severe impairments: osteoarthritis, degenerative disc disease in her cervical spine, headaches, major depressive disorder, generalized anxiety disorder, and borderline personality disorder. However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift/carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour day and stand/walk six hours in an eight-hour day. In addition, the undersigned finds that the claimant is able to engage in work that involves only simple instructions with little judgment and work that is routine, repetitive and learned by rote with few variables. Lastly, the undersigned finds that the claimant can engage in work that involves only superficial contact incidental to work with the public and coworkers and work where the supervision is concrete, direct and specific.

(Tr. 16). With the help of a vocational expert, the ALJ determined Plaintiff could perform work in small products assembly and poultry processing. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 8, 2010. (Tr. 4-7). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 7, 8).

**II.     Evidence Presented:**

At the administrative hearing before the ALJ on December 20, 2007, Plaintiff testified that she was forty-six years of age and had obtained a high school education. (Tr. 270-271). The record reflects Plaintiff's past relevant work consists of work as a collections clerk, a child support collector for a state agency, a cashier II and an outpatient admitting clerk. (Tr. 19, 55). The record reflects Plaintiff worked at a convenience store in 2007 through at least part of the fourth quarter. (Tr. 13, 41-43, 282).

The medical evidence in this case reflects the following. Plaintiff was treated at the Pea Ridge Medical Clinic from March 15, 2004, through November 21, 2005, by Dr. Lisa K. McGraw for various problems including a rash, epigastric pain, situational anxiety, pyelonephritis, a sore left hand, a sore throat and congestion, a headache, anxiety, and pain in her back, ankles and knees. (Tr. 87-122).

Plaintiff was also treated at Ozark Guidance, Inc., sporadically from October 12, 2002, through June 23, 2006, for depression, low self-esteem, and borderline personality disorder. (Tr. 123-170). During Plaintiff's last reported individual therapy session on June 23, 2006, Plaintiff reported she had been living with her boss but had moved in with an eighty-year-old man and had been cooking and cleaning for him to earn her keep. (Tr. 123). Plaintiff reported she had also finally met a nice man in her neighborhood whom she had gone out with and that they were planning on camping out on her aunt's property over the weekend. Plaintiff had also reported that she had been working forty-hour weeks in order to earn money to purchase her own car. Plaintiff noted that the work had been really hard and she was not sure that she could keep it up for a long period of time. Plaintiff was to return for a session in six weeks.

On March 13, 2006, Plaintiff underwent a general physical examination performed by Dr. Neil Mullins. (Tr. 171-177). Plaintiff complained of shoulder, hip, knee and ankle pain. Plaintiff reported her medications consisted of Darvocet, Klonopin, Effexor, Ambien, Phentermine, Lamisil and Kenalog. Upon examination, Dr. Mullins noted Plaintiff had full range of motion of her spine and extremities. Dr. Mullins found no signs of muscle spasm and Plaintiff's straight leg raising was normal. Dr. Mullins found no signs of muscle weakness or atrophy and Plaintiff had a normal gait and coordination. Upon a limb function evaluation, Dr. Mullins reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip 100 percent; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel and toes; and to squat and arise from a squatting position. Dr. Mullins diagnosed Plaintiff with chronic bursitis of both shoulders, chronic rheumatoid arthritis in the shoulders, knee and ankles, chronic depression and chronic malaise.

On March 16, 2006, Plaintiff underwent a mental status and evaluation of adaptive functioning performed by Virginia R. Krauft, Ed.D. (Tr. 178-183). Dr. Krauft noted Plaintiff was dropped off by her roommate. Plaintiff complained of major depression and arthritis in her knees and back. Plaintiff reported she took Darvocet and an over-the-counter drug called "Happy Joints" for pain. Plaintiff reported she had been receiving services for depression for a long time. Dr. Krauft noted that Plaintiff did not appear to be in physical pain during the assessment but Plaintiff seemed to be in emotional pain. Plaintiff reported that a lot of her emotional problems stemmed from her having to give up her three children for adoption. Plaintiff's medications consisted of Effexor, Klonopin, Darvocet and Ambien. Plaintiff reported she was working part-time at a convenience store. Plaintiff indicated that she lived with a lady

who had been kind enough to give her a place to live. Dr. Krauft estimated Plaintiff's IQ to be 80 or greater. Dr. Krauft noted there was no evidence of liability, mental confusion, disorientation in judgment or word-finding deficits. Dr. Krauft diagnosed Plaintiff with:

| | |
|---|---|
| AXIS I | Major Depression, Recurrent (296.33), per claimant report. Generalized Anxiety Disorder (300.02). |
| AXIS II | Rule-out Borderline Personality Disorder. |
| AXIS III | Arthritis in knees and back, per claimant report. |

(Tr. 182). Dr. Krauft opined that due to almost a lifelong history of difficulties, Plaintiff's prognosis was not good for improvement within the next twelve months.

Upon an evaluation of adaptive functioning, Dr. Krauft noted Plaintiff was able to be understood and could communicate effectively. Dr. Krauft noted Plaintiff was taking care of herself and that she was able to work a part-time job. Dr. Krauft found no limitations with Plaintiff's concentration, persistence and pace. Dr. Krauft found Plaintiff appeared to have some significant limitations in at least two areas of adaptive functioning that were not due to mental retardation. Dr. Krauft noted that Plaintiff did not appear to be exaggerating or malingering. Dr. Krauft opined Plaintiff would benefit from continued counseling, as well as medication support.

On March 16, 2006, Dr. Ronald Crow, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 184-191)**.**

On May 3, 2006, Dr. Jerry R. Henderson, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had mild restrictions of her activities of

daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 194-207). Dr. Henderson made the following comments:

> 45 year-old claimant with the long-term history of outpatient psychiatric treatment. Current MER, including the mental status examination, does not appear to support a meet or equaling of a listing. Unskilled capacity.

(Tr. 206).

On the same date, Dr. Henderson also completed a mental RFC assessment stating that Plaintiff had moderate limitations in the following areas: in her ability to understand and remember detailed instructions; in her ability to carry out detailed instructions; in her ability to maintain attention and concentration for extended periods; in her ability to sustain ordinary routine without special supervision; in her ability to work in coordination with or proximity to others without being distracted by them; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in her ability to accept instructions and respond appropriately to criticism from supervisors; in her ability to respond appropriately to changes in the work place; and in her ability to set realistic goals and make plans independently of others. (Tr. 208-211). Dr. Henderson opined that Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete." (Tr. 210). After reviewing all the evidence, Dr. Kay M. Gale affirmed Dr. Henderson's findings on October 4, 2006. (Tr. 220).

On October 4, 2006, Dr. Alice M. Davidson, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 212-219). Dr. Davidson made the following additional comments:

> The claimant alleges joint pain. THere (sic) is a GPCE on the initial level that shows normal range of motion of the spine and joints, normal muscle strength and normal limb function and normal gait.

(Tr. 219).

On December 25, 2006, Plaintiff was admitted into Northwest Medical Center after being involved in an automobile accident. (Tr. 224-239). Plaintiff's primary injury was a nasal fracture. Plaintiff also had a scalp laceration, extensive contusions and abrasions around her face. A CAT scan also revealed a herniated disk at C4-5 which was thought to be old. Plaintiff did not complain of neck pain. Plaintiff was noted to work at a gas station. While admitted, Plaintiff was examined by Dr. Rodney Routsong, a neurosurgeon, who noted that Plaintiff's deep tendon reflexes were +1/4 in the four extremities; that no sensory loss level was found; that Plaintiff had bilateral shoulder joint area pain on abduction at 45 degrees; that palpation of Plaintiff's anterior neck was unremarkable; that palpation of the bony spine revealed no point tenderness; and that Plaintiff had diffuse swelling about the left malar area and the left orbital area. Dr. Routsong's examination revealed no sign of radiculopathy, myelopathy or cervical fracture. Dr. Routsong diagnosed Plaintiff with a cerebral concussion and a nasal fracture.

Plaintiff was discharged on December 27th with instructions to see Dr. Stephen K. Morrison in one week at the clinic and to see an ENT.

On January 5, 2007, Plaintiff was seen at the Pea Ridge Medical Clinic for a follow-up appointment after her automobile accident. (Tr. 242-243). Plaintiff complained of discomfort over the left maxillary. Plaintiff denied any visual changes. Dr. George B. Howell Sr. noted Plaintiff had a periorbital contusion of the face. Plaintiff had full range of motion of the neck with some guarding. Plaintiff had no functional loss of her extremities and no particular facial aesthesia. Dr. Howell re-filled Plaintiff's current medications including Darvocet, Clonazepam, and Ambien. Plaintiff reported she had enough Effexor samples left so no prescription was given.

On May 31, 2007, Plaintiff was seen at the Tree of Life Clinic with complaints of anxiety/depression and arthritis. (Tr. 245). Plaintiff reported that her hips and shoulders were bothering her. There was also a question as to whether Plaintiff had a urinary tract infection. Plaintiff reported that she was out of Effexor and that she wanted to try Cymbalta. Plaintiff reported experiencing a withdrawal from stopping her Effexor. Plaintiff was diagnosed with a urinary tract infection and prescribed medication.

A Lab Report dated June 28, 2007, indicated Plaintiff was positive for the Hepatitis C antibody. (Tr. 250). Dr. Janelle Leigh Potts noted that Plaintiff needed further lab work and that Plaintiff would need to see a gastroenterologist.

On September 26, 2007, Plaintiff complained of a sinus infection and a cough. (Tr. 251). Dr. K. Marcus Poemoceah, of Gravette Medical Associates, noted Plaintiff also complained of pain in her shoulders and hips. Plaintiff indicated that she had tried Ultram in the past, but it

had not been helpful.  Dr. Poemoceah noted Plaintiff had obtained some Methadone from an illegal source and reported that it had helped her pain.  Dr. Poemoceah cautioned Plaintiff not to do that anymore.  Upon examination, Dr. Poemoceah noted significant crepitus in the shoulder but no significant crepitus in the right hip.  Dr. Poemoceah noted that x-rays showed no significant degenerative changes.  Dr. Poemoceah noted Plaintiff was getting her Cymbalta and Clonazepam through Poplar House.  Plaintiff was diagnosed with sinus infection and arthritic pain.  Dr. Poemoceah noted a drug contact for Vicodin was obtained.

### III.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one

year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**IV.** **Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

-10-

AO72A
(Rev. 8/82)

    **A.**    **Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that her impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's alleged disabling pain in her neck, shoulders, back, knees and ankles, the ALJ noted that, with the exception of Plaintiff's neck, there were no imaging studies showing abnormalities in any of these areas. The ALJ noted that Plaintiff was involved in a motor vehicle accident in December of 2006, and that a CT scan obtained showed a degenerative disc bulge and moderate central canal compromise at C5-6. The ALJ pointed out that a physical examination by Dr. Rodney Routsoug, a neurosurgeon in December 2006, revealed bilateral shoulder joint area pain on abduction, but Plaintiff's deep tendon reflexes were +1/4 in all four extremities. Plaintiff had no sensory or motor deficits and palpation of Plaintiff's spine revealed

no point tenderness. During the same admission, Dr. Jerry S. Dorman noted Plaintiff reported pain in both shoulders with range of motion testing, but Plaintiff had no tenderness and she had full range of motion in her cervical spine, as well as a normal grip strength. It is noteworthy that on January 5, 2007, Plaintiff was seen for a follow-up clinic visit after her automobile accident and she only complained of discomfort over her left maxillary. The ALJ also noted that in September of 2007, while Plaintiff complained of pain in her shoulders and hips, Dr. Poemoceah's examination revealed significant crepitus in her shoulder, but there was no crepitus in her hip and x-rays taken at that time showed no significant degenerative changes. The ALJ pointed out that the medical evidence showed that when Plaintiff did seek treatment for her joint pain, the medical professionals treated her conservatively and did not indicate that she needed to be referred to a specialist. The Court notes that conservative treatment is inconsistent with disabling pain. See Smith v. Shalala, 987 F.2d 1371, 1374-75 (8th Cir.1993) (prescriptions of only muscle relaxers and mild pain relievers were inconsistent with claimant's complaints of disabling pain; lack of significant medical restrictions on claimant's activities was inconsistent with complaints of disabling pain); Matthews v. Bowen, 879 F.2d 422, 425 (8th Cir.1989) (medical evidence revealing only minor impairments and minimal limits on range of motion and muscle flexion was sufficient basis to discount complaints of pain). Based on the evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's alleged neck, shoulder, back, knee and ankle impairments were not disabling.

With regard to Plaintiff's headaches, the ALJ noted that while Plaintiff reported she had daily headaches, the record fails to show Plaintiff sought on-going and consistent treatment for

these headaches. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain).

With regard to Plaintiff's disabling mental impairments, the ALJ noted that Plaintiff had a long-standing history of medication management, as well as some intermittent therapy for depression and anxiety. The ALJ further noted that Plaintiff received her medication from her primary care provider and not from a psychiatrist. The ALJ pointed out that Ozark Guidance records dated June 2, 2006, showed that Plaintiff was referred to an Ozark Guidance medical doctor. However, the record fails to show that Plaintiff went to this doctor or that Plaintiff sought treatment from Ozark Guidance after June 23, 2006. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). The ALJ also noted that the record showed that even when Plaintiff was being treated for her mental impairments, she was able to work. Schultz v. Astrue, 479 F.3d 979, 982-983 (8th Cir. 2007)(absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work). Based on the record as a whole, the Court finds substantial evidence supports the ALJ's determination that Plaintiff does not have a disabling mental impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. The ALJ pointed out that while Plaintiff complained of disabling pain, the record revealed that Plaintiff was able to complete her 80 hours of court mandated community service with the United Way in 2006 which consisted of laminating book covers, cleaning and doing some computer work. (Tr. 291-292). At the administrative hearing in February of 2009, when asked what she did during the day, Plaintiff testified that she would clean and "just live." (Tr.

-13-

297). In a Function Report dated February 13, 2006, Plaintiff reported that she was able to attend to her personal care; that she could do any and all household chores and yard work, noting that she sometimes needed to rest and would get back to the chores when she was in the mood; and that she liked to listen to the radio, look up lyrics on the computer, and to go camping once a year. (Tr. 63-70). This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application was supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

    **B.**    **RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that

a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when she determined Plaintiff could perform light work with limitations. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D. Hypothetical Question to the Vocational Expert:

The Court now looks to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. The Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled as she is able to perform work in small products

assembly and poultry processing. See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

IV. **Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of July 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE